## Owens v. Owens.

*Evidence—Ancient rules for determining credibility of witnesses still apply—Divorce and alimony—Allowance of alimony not manifestly against weight of evidence—Province of reviewing court not to fix amount of alimony.*

1. The ancient rules for determining the credibility of witnesses are still applicable, and, as they involve personal observation of witnesses while testifying, and a reviewing court does not have that opportunity, it should be slow to reverse a judgment on the weight of the evidence.

2. Where the husband is worth $600,000, inherited from his father, and the parties have one child, a daughter, 5 years of age, whose custody is awarded to the mother, an allowance of $150,000 as alimony, and an additional sum of $50,000, with a requirement that the latter sum be placed in trust so that the child shall receive the benefit of the income until she becomes 25 years of age, is not manifestly against the evidence.

3. It is not the province of a reviewing court to fix the amount which shall be awarded as alimony, but only to determine whether the amount adjudged in the trial court is manifestly against the weight of the evidence.

(Decided June 26, 1925.)

Error: Court of Appeals for Lucas county.

*Messrs. Hackett & Lynch,* for plaintiff in error.
*Messrs. Fraser, Hiett & Wall* and *Mr. W. W. Campbell,* for defendant in error.

Richards, J.   The original action was one for

[1] Appeal and Error, 4 C. J. § 2853; Witnesses, 40 Cyc. p. 2586; [2] Divorce, 19 C. J. §§ 614,817; [3] Id., § 767.

divorce and alimony brought by Florence G. Owens against John Raymond Owens. The husband filed a cross-petition, making serious charges against the wife, and asking that a divorce be adjudged to him.

On trial in the court of common pleas that court granted the wife a divorce on the grounds of gross neglect of duty and extreme cruelty, and adjudged that she was entitled to the custody of the minor child. The court further rendered a judgment in her favor for permanent alimony in the amount of $150,000, and for the sum of $50,000, additional, which latter sum was directed to be placed in trust by her for the use and benefit of the minor child, with a responsible trust company approved by the court, so that the child should receive the use and benefit of the income from the same until she reached the age of 25 years.

A bill of exceptions was taken containing more than 1,000 pages, and it is insisted in this court that the judgment should be reversed for failure of proof, and because the judgment is manifestly against the weight of the evidence, and for errors in admitting and rejecting evidence, and because the plaintiff below had not been a resident of the state of Ohio for the required statutory period. And it is also urged that the trial court erred in advancing the case and trying the same out of its proper order.

The parties to this action were married on April 25, 1919, when the wife was 20 years of age and the husband 24, and they have one child, a daughter, not quite 5 years of age. The plaintiff below had been reared in a convent and was the daughter

of frugal parents, and not accustomed to receiving and expending money in any considerable amounts prior to the time of her marriage. The husband was the son of wealthy parents, and accustomed to the expenditure of large amounts of money, some of it in ways not commendable, for his personal gratification. The wife soon fell into the way of living to which her husband had been accustomed. The evidence in this case demonstrates that riches alone can do little to promote happiness, for money was freely supplied by over-indulgent parents and used with a lavish hand, and yet the high anticipations of these young people ended in bitterness and broken hopes. The sordid story of their marital troubles should not be perpetuated in a judicial opinion. He led a fast life, not only in Toledo, but in Los Angeles and Hollywood, and under his tutelage she became an apt student. It is said that she could not stand the pace, and, in a sense, that is true, but on certain occasions she did not lag far behind.

Many witnesses testified on each side of the case for and against the contentions made by the respective parties. This testimony has had a careful examination at the hands of the court. The witnesses appeared in person before the trial court, for which reason that court was better able than this court to judge of their credibility. Suggestions for determining the truthfulness of witnesses have been frequently made by law writers, not only in the present day, but in earlier times. An ancient rule for determining the credibility of witnesses is stated with quaint phraseology, in 2 Pothier on

Obligations, Appendix, 258, edition of 1806, from which I quote:

"Observe both the plaintiff and defendant narrowly, and take notice if either and which of them, when he is speaking, hath his voice faulter in his throat, or his colour change, or his forehead sweat, or the hair of his body stand erect, or a trembling come over his limbs, or his eyes water, or if, during the trial, he cannot stand still in his place, or frequently licks and moistens his tongue, or hath his face grow dry, or in speaking to one point wavers and shuffles to another, or, if any person puts a question to him, is unable to return an answer, from the circumstances of such commotions they shall distinguish the guilty party."

From the careful examination which this court has given to the evidence, we cannot say that the judgment of divorce granted to the plaintiff below is manifestly and clearly against the weight of the evidence. If certain testimony which was introduced is entitled to credence, her conduct was far from being above criticism, but the trial judge found that it did not go to the extent that would bar her from being entitled to a divorce. While this court is opposed to the liberality in granting divorces which has frequently been practiced, yet we cannot say from this record that there was not sufficient evidence upon which to grant a divorce to her.

Coming now to that portion of the judgment awarding alimony: After the original petition was filed in this case, the plaintiff in error, through the death of his father, intestate, became heir to a one-third interest in the estate. The parties have

widely divergent views as to the value of the share which thus came to the plaintiff in error, and the trial judge found that it is substantially $600,000, and apportioned one-third of that amount to the wife as alimony and for establishment of a fund for the support of the child. From the evidence this court is convinced that the share of the estate inherited by the plaintiff in error is worth not less than the sum of $600,000, and it may be largely in excess of that amount. It is not the province of this court to fix the amount which shall be awarded as alimony, but only to determine whether the amount adjudged in the trial court is or is not manifestly against the weight of the evidence, and we cannot find that the amount adjudged in this case is manifestly against the weight of the evidence.

We have examined the other claimed errors, but find none to the prejudice of the plaintiff in error. The judgment will be affirmed.

*Judgment affirmed.*

WILLIAMS and YOUNG, JJ., concur.